JEFFREY P. MAZZA v. MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA AND ROBERT A. HUFFAKER

No. 415PA83

(Filed 28 August 1984)

1. **Insurance § 150— professional liability insurance—medical malpractice—coverage for compensatory and punitive damages—public policy**

Public policy of this State does not preclude liability insurance coverage for punitive and compensatory damages in a medical malpractice case based on wanton or gross negligence in the care and treatment of a patient.

2. **Insurance § 150— physician's liability policy—coverage for punitive damages for medical malpractice**

A physician's liability policy which required the insurer to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages" and which defined "damages" as "all damages, including damages for death, which are payable because of injury to which this insurance applies" provided coverage for punitive damages for medical malpractice.

3. **Appeal and Error § 69— effect of Court of Appeals precedent**

Precedents set by the Court of Appeals are not binding upon the Supreme Court.

WE allowed defendant's petition for discretionary review of the judgment entered in this declaratory judgment action by *Judge Brannon* at the 16 May 1983 Civil Session of WAKE County Superior Court, under N.C. Gen. Stat. § 7A-31, prior to a determination by the Court of Appeals.

Plaintiff appellee Jeffrey P. Mazza brought this action which is the subject of this appeal on 8 October 1981 against both defendants, Medical Mutual Insurance Company of North Carolina, hereinafter referred to as Medical Mutual, and Dr. Robert A. Huffaker. Plaintiff sought a determination of whether the Physicians' Liability Insurance Policy, hereinafter referred to as the insurance contract, issued by Medical Mutual to Dr. Huffaker, provides coverage for certain compensatory and punitive damages which were awarded earlier to plaintiff against Dr. Huffaker for medical malpractice.

The facts, as they relate to this case, indicate that on or about 1 May 1976, Medical Mutual issued an insurance contract to

Dr. Huffaker. During all times pertinent to the medical malpractice action, the insurance contract was in full force and effect.

On 20 October 1979, plaintiff filed a civil action against defendant in Orange County Superior Court. He alleged that Dr. Huffaker, his attending psychiatrist, had caused him injury and damage in several respects, such as by engaging in sexual intercourse with plaintiff's estranged wife and by abandoning plaintiff in a critical stage of plaintiff's treatment without reasonable notice to him. Plaintiff sought to recover compensatory and punitive damages for criminal conversation, alienation of affections, and medical malpractice arising out of the alleged misconduct of Dr. Huffaker.

At the conclusion of the trial in Orange County, the jury rendered a verdict in favor of plaintiff, awarding him $102,000.00 in compensatory damages and $500,000.00 in punitive damages on the medical malpractice count, $50,670.00 in compensatory damages on the criminal conversation count, and denying him a recovery for alienation of affections. This declaratory judgment action involves only the punitive and compensatory damages awards on the medical malpractice count.

The record discloses that Dr. Huffaker appealed the decision of the trial court, including the portion of the decision with respect to plaintiff's recovery of compensatory and punitive damages for the alleged medical malpractice. In an opinion reported at 61 N.C. App. 170, 300 S.E. 2d 833 (1983), the North Carolina Court of Appeals affirmed in all respects the judgment of the trial court, and we subsequently denied discretionary review.

Pending the appeal of the above civil case, the plaintiff brought this declaratory judgment action seeking a determination that the insurance contract obligates Medical Mutual to pay on behalf of Dr. Huffaker the actual damages and punitive damages assessed against Dr. Huffaker on the medical malpractice portion of the judgment in the Orange County civil trial. The trial court granted summary judgment in favor of the plaintiff, ruling that the terms of the insurance contract obligate Medical Mutual to pay plaintiff for both the actual damages and the punitive damages awarded on the medical malpractice count.

On 6 December 1983, we allowed defendant's petition for discretionary review. The matter was duly argued before us at our February Term, 1984.

*Boyce, Mitchell, Burns & Smith, P.A., by G. Eugene Boyce and Lacy M. Presnell, III for plaintiff-appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan by James D. Blount, Jr., Henry A. Mitchell, Jr., and Nigle B. Barrow, Jr. for defendant-appellant Medical Mutual Insurance Company of North Carolina.*

COPELAND, Justice.

Medical Mutual maintains that it is not liable for either the punitive damages or the actual damages awarded to plaintiff, and that the trial court committed reversible error in finding it liable. With regard to both the punitive and actual damages, the insurance company proffers similar arguments in support of its contention of non-liability. Defendant first argues that North Carolina's public policy precludes insurance coverage of punitive and compensatory damages caused by intentional misconduct. Second, the terms of the insurance contract did not include coverage for punitive damages.

The provision of the insurance contract which is at issue reads as follows:

I. *Terms.* The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

1. *Individual Professional Liability Coverage.*—A. Any claim or claims made against the Insured during the policy period arising out of the performance of professional services rendered or which should have been rendered . . . by the Insured . . .

According to our interpretation of the insurance contract, the terms provide coverage for actual and punitive damages. Further, this State's public policy does not prohibit insurance coverage of punitive damages nor of actual damages. We shall consider first the contentions of the parties with regard to the punitive damage award.

## I.

[1]    In making the determination as to punitive damages, we are concerned first with whether public policy prohibits insurance coverage of punitive damages based upon wanton or gross negligence or, as in the present case, medical malpractice, and second, whether the terms of the insurance contract cover punitive damages. There are no North Carolina cases directly on point. Courts in other jurisdictions have considered these questions, and before 1970, it appears that a particular court's decision depended primarily upon which of these two issues the court focused its attention. Our research discloses that courts relying upon the language of the insurance policy generally have decided that punitive damages were recoverable. One of the leading cases reaching this conclusion is *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W. 2d 1 (1964). Other cases reaching the same conclusion are *Carroway v. Johnson*, 245 S.C. 200, 139 S.E. 2d 908 (1965); *Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co. v. Thornton*, 244 F. 2d 823 (4th Cir. 1957); *Glens Falls Indemnity Co. v. Atlantic Building Corp.*, 199 F. 2d 60 (4th Cir. 1952); *American Fidelity & Casualty Co. v. Werfel*, 230 Ala. 552, 162 So. 103 (1935); *Ohio Casualty Insurance Co. v. Welfare Finance Co.*, 75 F. 2d 58 (8th Cir. 1934), *cert. denied*, 295 U.S. 734, 79 L.Ed. 1682 (1934). *See* Annot., 16 A.L.R. 4th 14 (1982).

We believe that the recent trend of those courts considering the public policy question, has been to allow insurance coverage for punitive damages. *See: Anthony v. Frith*, 394 So. 2d 867 (Miss. 1981); *Harrell v. Travelers Indemnity Co.*, 279 Or. 199, 567 P. 2d 1013 (1977); *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.*, 95 Idaho 501, 511 P. 2d 783 (1973); *Price v. Hartford Accident & Indemnity Co.*, 108 Ariz. 485, 502 P. 2d 522 (1972). Some of these courts have reasoned that public policy is not an issue. Others say that competing public policies outweigh the consideration of punishing the insured by way of punitive damages. Comment, The Exclusion Clause: A Simple and Genuine Solution to the Insurance for Punitive Damages Controversy, 12 U.S.F.L. Rev. 743, 746 (1978). Additionally, "[w]ith respect to construction of various types of insurance contracts . . . the courts . . . have usually held that coverage of punitive damages was provided when construing policies covering . . . pro-

fessional . . . entities or their employees. . . ." Annot., 16 A.L.R. 4th 14, 16.

Many courts have allowed recovery of punitive damages for willful and wanton negligence because there existed a distinction between negligence and intentional torts. *Hensley v. Erie Insurance Co.*, 283 S.E. 2d 227 (W. Va. 1981); *Continental Insurance Cos. v. Hancock*, 507 S.W. 2d 146 (Ky. 1974); *Ohio Casualty Insurance Co. v. Welfare Finance Co.*, 75 F. 2d 58, *cert. denied*, 295 U.S. 734. This rationale was applied in *Morrell v. Lalonde*, 45 RI 112, 120 A. 435, *error dismissed*, 264 U.S. 572, 68 L.Ed. 855 (1923). That court held that punitive damages were recoverable for medical malpractice under a liability insurance policy.

The main thrust of defendant's argument concerning punitive damages is that allowing insurance coverage for punitive damages is contrary to public policy. Defendant asserts that the "purposes of awarding punitive damages in North Carolina are to punish the wrongdoer individually and to deter the wrongdoer and others from engaging in similar misconduct." Medical Mutual contends that this Court, by allowing insurance coverage for punitive damages, would frustrate the purposes for which punitive damages are awarded.

We know of no public policy of this State that precludes liability insurance coverage for punitive damages in medical malpractice cases. North Carolina General Statute § 58-72 appears to authorize insurers to provide coverage for punitive damages. The modern trend and better reasoned decisions in other jurisdictions are to the effect that it is not against public policy to insure against punitive damages. *Harrell v. Travelers Indemnity Co.*, 279 Or. 199, 567 P. 2d 1013; *Price v. Hartford Accident & Indemnity Co.*, 108 Ariz. 485, 502 P. 2d 522; *Dairyland County Mutual Insurance Co. v. Wallgren*, 477 S.W. 2d 341 (Tex. Civ. App. 1972); *Southern Farm Bureau Casualty Insurance Co. v. Daniel*, 246 Ark. 849, 440 S.W. 2d 582 (1969).

The relief the insurance company now seeks is the development by this Court of a statement of public policy regarding punitive damages stemming from medical malpractice. Defendant bases its argument upon its contention that the act or acts constituting the medical malpractice were intentional. However, the record fails to indicate a specific determination by the jury that

the medical malpractice was intentional, as opposed to wanton or gross negligence. We find no merit in defendant's contention that the medical malpractice aspects of this case involved intentional acts by Dr. Huffaker. Medical Mutual argued at trial and in its brief on appeal, that Dr. Huffaker's actions did not constitute medical malpractice since the physician-patient relationship between Dr. Huffaker and the plaintiff no longer existed at the time in question. The trial judge, having determined that there was sufficient evidence of a physician-patient relationship, instructed the jury that the medical malpractice was the negligent care and treatment of a patient by a doctor. The jury returned a verdict in favor of plaintiff based on that charge. Thus, in our opinion, the medical malpractice in the instant case resulted from the attending doctor's negligence in abandoning treatment of the plaintiff and in failing to follow the applicable medical standard of care. However, we emphasize that at this time we neither reach nor decide the question of whether public policy prohibits one from insuring himself from the consequences of his or her intentional tortious acts.

In reviewing the considerations pertaining to public policy in North Carolina, it is important to note that punitive damages are recoverable for injuries other than those intentionally inflicted. This Court has stated that:

> It is generally held that punitive damages are those damages which are given in addition to compensatory damages because of the "wanton, reckless, malicious or oppressive character of the acts complained of."

*Oestreicher v. American National Stores, Inc.*, 290 N.C. 118, 134, 225 S.E. 2d 797, 807 (1976). Thus in North Carolina, punitive damages may be awarded in negligence cases for wanton or gross acts.

Since punitive damages are recoverable in North Carolina in cases where intentional injury is not involved, there is a compelling reason that this Court should not create a new public policy prohibiting insurance coverage for punitive damages. The interests of doctors and patients alike can best be served by medical malpractice insurance that protects the doctor and patient, even when the doctor's negligence is wanton or gross. The insurance company in this case would not contend that doctors

Mazza v. Medical Mut. Ins. Co.

would be more reckless or would more frequently commit gross negligence simply because they are insured under a professional liability insurance policy that covers punitive damages.

Medical Mutual, in advancing its "public policy" argument, seems to ignore the proposition that the concept of "public policy" involves not one simplistic rule, but various competing doctrines. In this case, the law of contracts and the "public policy" doctrines encompassing that body of law, compete with the defendant's tort related "public policy" argument.

This declaratory judgment action arose out of a contract controversy between Dr. Huffaker and Medical Mutual. The issues before this Court are based on contract, thus, we must consider applicable public policy concerning contract rights. The competing public interests must be carefully balanced. A significant public policy consideration focuses on insurance companies' obligations to honor their contracts. In the present case, Medical Mutual drafted the insurance contract presumably upon the advice of competent counsel, sold the contract, accepted the requisite premiums and tendered protection. Thus under the circumstances, requiring Medical Mutual to honor its obligations would best serve public policy. The right of parties to enter into contracts is a valid and important public interest to consider in balancing the competing interests involved. We should not be quick to invalidate private insurance contracts.

The North Carolina Legislature has not imposed any restrictions or regulations on insurance companies' right to sell liability insurance in this State which covers punitive damages for medical malpractice. *See*: N.C. Gen. Stat. § 58-72.

In addition to the absence of legislative restriction, there is an area of North Carolina case law that supports plaintiff's position in this case. The law and public policy in North Carolina regarding liability for punitive damages under the doctrine of *respondeat superior* is germane to the issue involved in the present case. In our State, a master is liable for punitive damages awarded when the servant or agent causing the injury was acting in the course and scope of the master's business. *Hairston v. Atlantic Greyhound Corp.*, 220 N.C. 642, 18 S.E. 2d 166 (1942). This rule refutes the insurance company's contention that public

policy prohibits anyone other than the actual wrongdoer or tort-feasor from paying punitive damages.

Our research reveals a recent case from Michigan involving a similar fact situation and almost identical insurance policy language. In *Vigilant Insurance Company v. Kambly*, 114 Mich. App. 683, 319 N.W. 2d 382 (1982), a psychiatrist had induced his patient to engage in sexual relations with him as part of her purported therapy. The insurance company, with whom the doctor had his professional liability coverage, sought to escape payment of the punitive damages awarded claiming that public policy grounds prohibited such coverage. The insurance company contended that the doctor's conduct was intentional and, under Michigan law, felonious, and public policy would therefore preclude the applicability of liability insurance for his protection. It further argued that it was contrary to public policy to permit an insured to profit from his own wrongdoing or to encourage the commission of unlawful acts by relieving the wrongdoer of financial responsibility.

In ruling against the insurance company, the Michigan Supreme Court noted first and foremost that the "insurance policy does not provide exemption for the insurer from liability for judgment arising from injuries sustained as a result of this form of malpractice." *Id.* at 687, 319 N.W. 2d at 384. That court further held that:

> Insurance policies drafted by the insurer must be construed in favor of the insured to uphold coverage. Limitations in the policy must be clearly expressed . . . [Citation omitted.] Moreover, the public policy considerations raised by plaintiff which prohibit the insurability of criminal or intentionally tortious conduct are not present here.

*Id.* at 687, 319 N.W. 2d at 385.

[2]   With regard to Medical Mutual's argument that there is no contractual liability, we shall utilize a strict contractual analysis focused on the language of the insurance contract to determine whether coverage exists. Medical Mutual Insurance Company contracted to pay on behalf of its insured ". . . all sums which the insured shall become legally obligated to pay as damages . . ." We believe that the language used in the present insurance contract

is so broad that it must be interpreted to provide coverage for punitive damages for medical malpractice. Many courts have held that the insurer's use of such broad language does include punitive damages. *Hensley v. Erie Insurance Co.*, 283 S.E. 2d 227; *Cedar Rapids v. Northwestern National Insurance Co.*, 304 N.W. 2d 228 (Iowa 1981); *Dayton Hudson Corp. v. American Mutual Liability Insurance Co.*, 621 P. 2d 1155 (Okla. 1980); *State v. Glens Falls Co.*, 137 Vt. 313, 404 A. 2d 101 (1979); *Colson v. Lloyd's of London*, 435 S.W. 2d 42 (Mo. App. 1968); *Carroway v. Johnson*, 245 S.C. 200, 139 S.E. 2d 908; *Glens Falls Indemnity Co. v. Atlantic Building Corp.*, 199 F. 2d 60.

Nevertheless, defendant Medical Mutual argues that this policy does not cover punitive damages. It bases this contention upon the policy's definition of damages and one of the stated reasons for punitive damages in North Carolina. The insurance company suggests that this Court isolate one of the stated purposes for punitive damages in North Carolina and construe that together with the definition of "damages" in the policy to arrive at a conclusion that the parties in this case did not intend the policy to cover punitive damages relating to professional malpractice. We believe this to be contrary to ordinary common sense and the rules enunciated by our Court in *Grant v. Emmco Insurance Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978) where we stated, speaking through Justice Lake in an unanimous opinion, that:

> . . . a contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean and, if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language. (Citations omitted.)

*Id.* at 43, 243 S.E. 2d at 897.

Medical Mutual argues that the term "damages" as defined in its insurance contract, includes "only those damages attributable to a particular injury" and do not include punitive damages. In looking at the language in the policy, we find the term "damages" defined as "all damages, including damages for death, which are payable because of injury to which this insurance applies." In its brief Medical Mutual emphasizes the word "injury" and argues

that the use of that word in some way excludes punitive damages from the damages covered by the policy. According to Black's Law Dictionary, 706 (rev. 5th ed. 1979) the word "injury" is defined as "any wrong or damage done to another, either in his person, rights, reputation or property."

We said in *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 438, 146 S.E. 2d 410, 416 (1966), speaking again through Justice Lake:

> In the construction of contracts, even more than in the construction of statutes, words which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage, rather than a restrictive meaning which they may have acquired in legal usage.

We do not believe that an ordinary layman would interpret or understand the insurance policy in this case to mean what Medical Mutual contends. The plain and ordinary meaning of the language used in the policy, particularly from the viewpoint of a layman, covers "all damages" and contains no exclusion for punitive damages.

If any ambiguity exists in the insurance contract, then, the fault lies with the insurance company and not with the insured. Medical Mutual selected and adopted the language and terms used in its policy of insurance and thus placed itself in the position in which it now finds itself. If the insurance company uses "slippery" words in its policy, it is not the function of this Court "to sprinkle sand upon the ice by strict construction" to assist the insurance company. *See: Id.* at 437, 146 S.E. 2d at 416. We place great emphasis on the fact that there is no specific exclusion in the insurance contract for punitive damages. If the insurance carrier to this insurance contract intended to eliminate coverage for punitive damages it could and should have inserted a single provision stating "this policy does not include recovery for punitive damages."

Furthermore, the fact that a dispute arose as to the interpretation of the insurance contract, which resulted in this lawsuit, makes it apparent that the language of the policy is at best ambiguous. In *Maddox v. Colonial Life and Accident Insurance Co.,*

303 N.C. 648, 650, 280 S.E. 2d 907, 908 (1981), we stated that "[a]n ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties." The well established and universal rule is that insurance contracts will be liberally construed in favor of the insured and strictly construed against the insurer, since the insurance company selected the language used in the policy. 43 Am. Jur. 2d, *Insurance*, § 272 (1982); 7 Strong's N.C. Index 3d, *Insurance*, § 6.3 (1977). Thus, any ambiguity, with respect to the policy's coverage of punitive damages for medical malpractice, must be resolved in favor of coverage.

In its brief, Medical Mutual relies upon two North Carolina cases, *Cavin's Inc. v. Atlantic Mutual Insurance Co.*, 27 N.C. App. 698, 220 S.E. 2d 403 (1975) and *Nationwide Mutual Insurance Co. v. Knight*, 34 N.C. App. 96, 237 S.E. 2d 341, *cert. denied*, 293 N.C. 589, 239 S.E. 2d 263 (1977), to support its argument that North Carolina case law precludes insurance coverage of punitive damages. A careful examination of the insurance contracts, factual situations, and holdings in *Cavin's* and *Knight* convinces us that these two cases are clearly distinguishable from the case *sub judice*, and are not any legal precedent upon which to base a decision favorable to the defendant Medical Mutual. In other words, neither *Cavin's* nor *Knight* control in this situation.

[3] We note also that, even if *Cavin's* and *Knight* were not distinguishable from this case, precedents set by the Court of Appeals are not binding on this Court. As we stated in our recent decision of *Northern Nat'l Life Ins. v. Miller Machine Co.*, 311 N.C. 62, 316 S.E. 2d 256 (1984), "[i]t is fundamental that the highest court of a jurisdiction may overrule precedents established by decisions of intermediate appellate courts." Nor do we find it determinative that this Court denied a petition for discretionary review in *Knight*, since such a denial does not signify our approval of the Court of Appeals' decision. "It may mean only that no harmful result is likely to arise from the Court of Appeals' opinion." *Id.*

For the foregoing reasons, we conclude that the terms of the insurance contract in the present case provide coverage for punitive damages, and public policy does not prohibit such coverage.

## II.

[1] We next address the defendant's challenge to the trial court's ruling that plaintiff was entitled to recover against Medical Mutual for the actual damages awarded. Medical Mutual argues that public policy precludes liability insurance coverage of actual damages caused by intentional wrongdoing. We do not have to reach this question, since we determined earlier that the medical malpractice aspects of this case do not involve intentional acts. In support of its argument that the doctor's conduct was intentional, Medical Mutual confuses the criminal conversation cause of action with the medical malpractice cause of action. Unquestionably, the doctor's "criminal conversation" was intentional. However, the allegations of the doctor's medical malpractice in his treatment of the plaintiff and his careless disregard of the effect of his actions involved wanton negligence, and are quite different from the allegations of an intentional act of criminal conversation. The jury decided that Dr. Huffaker's treatment of the plaintiff constituted negligence and a conscious disregard for the "mental well-being" of the plaintiff. The record discloses no evidence indicating that the doctor intended to inflict the injuries that resulted to his patient. While the doctor voluntarily engaged in lascivious activities with plaintiff's wife, he did not intentionally commit malpractice nor cause the resulting injury sustained by plaintiff. Additionally, unlike most general liability insurance policies, the policy in question has no specific exclusion for "intentional" acts or injury intentionally inflicted by the insured.

Accordingly, we conclude that the trial court properly held that the insurance contract covers the award for punitive damages as well as the award for actual damages. We find no error in the trial court's granting of summary judgment for the plaintiff.

Affirmed.