**VALLEY FORGE INSURANCE COMPANY, and Ellen P. Williams, Plaintiffs,**

v.

**Andrew M. JEFFERSON, Valley Forge Insurance Company and Continental Casualty Company, Defendants.**

Civ. A. Nos. 85–29, 85–109.

United States District Court,
D. Delaware.

Jan. 16, 1986.

Opinion On Reargument Feb. 7, 1986.

John G. Mulford, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., for Valley Forge Ins. Co. and Continental Cas. Co.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for Ellen P. Williams.

J. Michael Johnson, of Biggs & Battaglia, Wilmington, Del., for Andrew M. Jefferson.

MURRAY M. SCHWARTZ, Chief Judge.

This diversity action arises out of a verdict and judgment received by Ellen Williams in her suit against Andrew Jefferson for injuries sustained when Jefferson's automobile collided with hers. Williams was awarded $250,000 compensatory damages and $100,000 punitive damages in the Superior Court of the State of Delaware in

and for New Castle County. Thus far, Williams has received $250,000 from Jefferson's automobile liability insurer. The Court is asked to decide whether the terms of two liability-insurance contracts covering Jefferson require his insurers to pay the $100,000 in punitive damages.

At the time of the accident, Jefferson, a minor, was insured for $300,000 under an automobile liability policy issued in his name by Valley Forge Insurance Company ("Valley Forge"). Jefferson was also insured under a "Personal Umbrella Excess Policy" issued by Continental Casualty Company ("Continental") to Edward and Naomi Jefferson, Andrew Jefferson's parents.

After entry of judgment against Andrew Jefferson, Valley Forge paid Williams the $250,000 compensatory-damages award, but refused to pay any punitive damages on the ground Jefferson's policy did not cover punitive damages. Continental has refused to pay the $50,000 in damages which exceeds the Valley Forge policy limits, arguing this accident is not covered under Jefferson's parents' policy because the policy covers automobile accidents only if the automobile involved was owned by the parents.

Plaintiff Valley Forge brought an action for declaratory judgment against its insured, Andrew Jefferson, who has counterclaimed for declaratory judgment. Their dispute centers on whether Valley Forge is liable under the terms of its policy with Jefferson to pay Ellen Williams the jury award of punitive damages that she received against Jefferson. This action was joined with an action brought by Williams against Valley Forge and Continental. Williams is seeking summary judgment against Valley Forge in the amount of $50,000, the sum remaining on Jefferson's liability policy, and summary judgment against Continental as excess liability insurer in the amount of $50,000. Valley Forge and Continental are each seeking a declaratory judgment that their respective policies do not obligate them to pay Williams.

**Analysis**

### A. Applicable Law for Decision

■ Since this action arises under the Court's diversity jurisdiction, 28 U.S.C. § 1332, this Court is bound to apply the law that would be applied by the State of Delaware, the state in which it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Furthermore, the Court must apply the choice-of-law rule that a Delaware court would apply in this case. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ In *Oliver B. Cannon & Son v. Dorr-Oliver, Inc.,* 394 A.2d 1160, 1166 (Del. 1978), the Delaware Supreme Court applied the "most significant relationship" test of the *Restatement (Second) of Conflict of Laws* § 188 (1971), for choice-of-law questions in a contract case. Under this approach, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties...." *Restatement (Second), supra,* § 188, at 575. The Valley Forge policy covered a Delaware-registered automobile garaged in Delaware and owned by a Delaware resident, and is therefore governed by Delaware law. The Continental policy covered Delaware citizens who were domiciled in Delaware and is thus also governed by Delaware law.

### B. The Valley Forge Policy

The first question is whether Valley Forge is obligated to pay Williams punitive damages of $50,000, which, when combined with the $250,000 in compensatory damages she has already received from Valley Forge, will exhaust the $300,000 liability limitation in the insurance contract purchased by Jefferson. Valley Forge refuses to pay, claiming first that the contract is limited by its terms to compensatory damages, and second that to pay punitive damages on an automobile liability insurance contract would violate public policy.

■ In the ordinary course, "the State's highest court is the best authority on its own law." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The parties agree there are no Delaware cases on point. Therefore, a federal court must predict what the highest state court would do. *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring).

To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. [Citation omitted.] The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies and the decisions of other courts may also inform our analysis.

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981) (*quoted in Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 910 (3d Cir.1985)).

### 1. The Terms of the Insurance Contract

The Court looks first to the terms of the insurance contract between the parties. In the recent case of *Hallowell v. State Farm Mutual Automobile Insurance Co.*, 443 A.2d 925 (Del.1982), the Delaware Supreme Court set forth the special rules of construction guiding its interpretation of insurance contracts. "[W]hen the language of an insurance contract is clear and unambiguous, a party will be bound by its plain meaning." *Id.* at 926 (citations omitted). If there is some ambiguity in the policy language, however, "an insurance contract is construed strongly against the insurer," who drafted the language, and in favor of the insured. *Id.* (citations omitted). "[A]mbiguity exists when the language in a contract permits two or more reasonable interpretations." *Id.* (citations omitted).

The Valley Forge insurance contract provides: "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." Dkt. 15A, at B-6. The policy does not define the term "damages for bodily injury."

No general agreement exists among the numerous courts that have examined the question whether an insurer is liable to pay punitive damages under the terms of its liability policy with the insured. Some courts have found contract language similar to that under review to be plain and unambiguous, and have concluded that "damages" includes compensatory and punitive damages. *See, e.g., Norfolk & W. Ry. v. Hartford Acc. & Indem. Co.*, 420 F.Supp. 92, 94 n. 1 (N.D.Ind.1976); *Price v. Hartford Acc. & Indem. Co.*, 108 Ariz. 485, 502 P.2d 522, 523 (1972); *Southern Farm Bur. Cas. Ins. Co. v. Daniel*, 246 Ark. 849, 440 S.W.2d 582, 584 (1969); *Anthony v. Frith*, 394 So.2d 867, 868 (Miss.1981); *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E.2d 217, 219 (1984); *Carroway v. Johnson*, 245 S.C. 200, 139 S.E.2d 908, 910 (1965); *State v. Glen Falls Ins. Co.*, 137 Vt. 313, 404 A.2d 101, 105 (1979); and *Brown v. Maxey*, 124 Wis.2d 426, 369 N.W.2d 677, 686 (1985). Other courts, reasoning that "damages" means only compensatory damages, have refused to require insurance companies to pay punitive damages as part of their contractual obligation to their insured. *See, e.g., Universal Indem. Ins. Co. v. Tenery*, 96 Colo. 10, 39 P.2d 776, 779 (1934); *Schnuck Mkts., Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 209-10 (Mo.App.1983). Still other courts have found the language ambiguous. *See, e.g., Greenwood Cemetery, Inc. v. Travelers Indem. Co.*, 238 Ga. 313, 232 S.E.2d 910, 913 (1977); *Harrell v. Travelers Indem. Co.*, 279 Or. 199, 567 P.2d 1013, 1015 (1977).

■ I find that the contract language requiring Valley Forge to pay damages assessed against its insured is ambiguous. By the terms of the contract, Valley Forge did not promise to "pay for bodily injury or property damage." That is, it did not promise to compensate for actual injury incurred. Instead, the insurance contract is tied to a legal determination of damages:

the policy commits Valley Forge to pay *"damages* for bodily injury or property damage *for which any covered person becomes legally responsible because of an auto accident."* (emphasis added).

The Valley Forge policy did not state it would pay only compensatory damages. The term "damages for bodily injury or property damage" may be read to mean "compensatory damages," as Valley Forge argues, but that is not the only possible interpretation. This phrase may be read to include punitive damages.

Punitive damages in a personal injury suit are assessed only "for bodily injury or property damage." *See Cloroben Chem. Co. v. Comegys,* 464 A.2d 887, 892 (Del. 1983) (citing *Reynolds v. Willis,* 58 Del. 368, 209 A.2d 760 (1965)) (award of punitive damages may not be disproportionate to the award for compensatory damage). They are also without question damages for which a person is "legally responsible." If the damages clause is construed as a whole ("damages ... because of an auto accident"), the clause may be interpreted as including *all* damages, however characterized by a jury, for bodily injury or property damage.

■ From the foregoing, it is clear the contract language is ambiguous because it is susceptible to two interpretations. Under Delaware law, the Court must construe the Valley Forge contract against the insurer. It follows that if there is no other provision in the contract clarifying the language, defendant Valley Forge must be declared liable for punitive damages.

■ Valley Forge purports to find solace in another provision of the contract. The contract contains a number of exclusions to its Liability Coverage. *See* Dkt. 15A, at B–7 to B–8. In part, the exclusion section reads "We do not provide Liability Coverage for any person: 1. Who intentionally causes bodily injury or property damage." *Id.* at B–6. The parties are agreed that

there is no provision expressly excluding punitive damages from coverage, and the provision excluding from coverage intentional acts of the insured is inapplicable.[1] The "intentional injury" exclusion should be read according to its terms and not expansively so as to exclude from coverage gross, wanton, or reckless negligence by the insured. I find that this exclusion contained within the Valley Forge insurance policy does not cure the ambiguity of the contract term at issue.

The Court holds that Valley Forge is obligated under the terms of its automobile liability insurance contract to pay punitive damages assessed against its insured.

## 2. Whether an Award of Punitive Damages Violates Public Policy

Ordinarily the Court's finding on the contract issue would be dispositive. Valley Forge, however, urges that, even if the contract is read to hold the insurer liable, it contravenes public policy to hold an insurance company liable for punitive damages assessed against its insured, because punitive damages are intended to punish and deter the tortfeasor. Were the insurance company forced to pay, Valley Forge argues, this purpose would be frustrated, for punishment would be visited upon the insurance company alone.

To hold the insured not covered as to punitive damages would partially void an otherwise valid contract, *see Lazenby, supra,* 383 S.W.2d at 5, a decision not to be made lightly and certainly not without a clear signal that the contract term at issue is repugnant to Delaware's public policy. As the Supreme Court has observed,

> [I]t must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly

**1.** Valley Forge does not contend that Andrew Jefferson intentionally caused the automobile accident.

appear that they contravene public right or the public welfare.

*Baltimore & O Sw. Ry. v. Voight,* 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560 (1900).

There is a sharp division among the courts that have examined the public-policy argument advanced by Valley Forge. The leading case holding that public policy prohibits insuring against liability for punitive damages is *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962). Applying Florida law, the *McNulty* court concluded that punitive damages are intended to punish the wrongdoer and not to compensate the victim. *Id.* at 435–36. To deter effectively, therefore, the monetary punishment should fall on the wrongdoer directly. A person able to insure against punitive damages "gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct." *Id.* at 440. The Court observed: "it appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway." *Id.* at 441.[2] *See also Beaver v. Country Mut. Ins. Co.,* 95 Ill.App.2d 1122, 51 Ill.Dec. 500, 502, 420 N.E.2d 1058, 1060 (1981); *Hartford Acc. & Indem. Co. v. Village of Hempstead,* 48 N.Y.2d 218, 422 N.Y.S.2d 47, 53, 397 N.E.2d 737, 744 (1979); and *Esmond v. Liscio,* 209 Pa.Super. 200, 224 A.2d 793, 799 (1967) (all citing *McNulty*).

Numerous other courts have found no public policy prohibiting insurance against punitive damages. *See Lazenby v. Universal Underwriters Ins. Co.,* 214 Tenn. 639, 383 S.W.2d 1, 5 (1964). *Accord Price v. Hartford Acc. & Indem. Co.,* 108 Ariz. 485, 502 P.2d 522 (1972); *Southern Farm Bur. Cas. Ins. Co. v. Daniel,* 246 Ark. 849, 440 S.W.2d 582, 584 (1969); *Abbie Uriquen Olds. Buick, Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783, 789 (1973); *Anthony v. Frith,* 394 So.2d 867, 868 (Miss.1981); *First Bank (N.A.) v. Transamerica Ins. Co.,* 679 P.2d 1217, 1223 (Mont.1984); *Mazza v. Medical Mut. Ins. Co.,* 311 N.C. 621, 319 S.E.2d 217, 219 (1984); *Harrell v. Travelers Indem. Co.,* 279 Or. 199, 567 P.2d 1013, 1016 (1977); *State v. Glen Falls Ins. Co.,* 137 Vt. 313, 404 A.2d 101, 105 (1979); *Hensley v. Erie Ins. Co.,* 283 S.E.2d 227, 233 (W.Va.1981); *Brown v. Maxey,* 369 N.W.2d 677, 688 (Wis.1985); and *Sinclair Oil Co. v. Columbia Cas. Co.,* 682 P.2d 975, 981 (Wyo.1984).

For guidance on the public policy of the State of Delaware, the Court looks first to the Delaware legislature and then to decisions by the state judiciary. In enacting mandatory automobile liability insurance, 21 Del.C.Ann. § 2902 (Michie 1974), the Delaware legislature declared as the public policy: "to protect the public at large, at all times, in its possible claims against the owner or driver of a motor vehicle involved in an accident resulting in bodily injury or property damage." *Hamon v. Richards,* 55 Del. 200, 190 A.2d 612, 616 (Del.Super.1963).

Liability insurance is defined as:

[i]nsurance against legal liability for the death, injury or disability of any human being, or for damage to property, and provision of medical, hospital, surgical, disability benefits to injured persons and funeral and death benefits to dependents, beneficiaries or personal representatives of persons killed, irrespective of legal liability of the insured, when issued as an

2. The court also observed:
[t]here are substantial practical difficulties, bearing on public policy, in allowing insurance against punitive damages. (1) It would produce a serious conflict of interest between the insurer and the insured in settlement negotiations and in trial tactics.... (2) There would be a conflict between the rule that in assessing punitive damages evidence of the financial standing of the defendant may be considered by the jury and the rule against referring to the defendant's insurance in the presence of the jury. (3) Fantastic results would be possible having no relation to making the injured party whole....
*McNulty, supra,* at 441.

incidental coverage with or supplemental to liability insurance.

18 Del.C.Ann. § 906(b).

From the above, one can conclude that the Delaware legislature has formulated no policy forbidding insurance coverage of punitive-damages awards. In declaring its intent "to protect the public ... in its possible claims" against a tortfeasor, the legislature did not limit automobile liability insurance to compensatory damages only. Furthermore, the statutory definition of "liability insurance" is grounded in *"legal* liability" (emphasis added), a term which, as discussed earlier, encompasses both compensatory and punitive damages.

The Delaware Supreme Court has not addressed directly the public policy argument before the Court. The court's discussion of insurance of punitive damages in *Reynolds v. Willis,* 58 Del. 368, 209 A.2d 760, 763 (1965), however, indicates that it would not declare this contract term void as against public policy but would instead uphold the clause on the ground that the legislature was the only proper forum to determine whether insurer coverage for punitive damages is against public policy.

*Reynolds v. Willis* was a wrongful-death and survival action brought by the widow of the decedent, who had died as a result of injuries sustained in an automobile accident. The court permitted the plaintiff to recover punitive damages in her survival action, based on a finding of wanton conduct by the defendant. *Id.*

In allowing the recovery of punitive damages, the Delaware Supreme Court rejected defendant's argument that such recovery should be denied because "in most automobile accident cases, punitive damages would punish the insurer rather than the defendant." *Id.* The court's answer is instructive: "We realize the truth of that suggestion.... If these results are deemed undesirable as a matter of public policy, the Legislature is the proper forum in which to seek a change; as a Court, we cannot create distinctions based upon the existence of insurance." *Id.* The importance of the *Reynolds v. Willis* opinion is the philosophical inclination of the Delaware Supreme Court to abjure reliance on "public policy" in order to prohibit an insurer from paying an award of punitive damages for wanton conduct of its insured.[3]

■ Thus bereft of guidance from the state legislature, but having the benefit of strong dicta from the Delaware Supreme Court, I am unwilling to proclaim that Delaware's "public policy" would overturn the language of the insurance policy at issue.[4] It is concluded public policy does not prohibit a liability insurer from paying punitive damages assessed against its insured.

## C. The Continental Insurance Policy

■ The Court's holding that Valley Forge must pay $50,000 punitive damages to Ellen Williams does not end the matter. There remains unsatisfied $50,000 in punitive damages on her judgment. Williams contends that the excess $50,000 is covered by the Continental policy.

The Continental Personal Umbrella Excess Policy issued to Edward and Naomi Jefferson provides insurance coverage once the primary coverage is exhausted. The policy defines "covered person" as, *inter*

**3.** Under Delaware law, a contract to relieve a party from liability for its intentional or willful acts is unenforceable as against public policy. *James v. Getty Oil Co.,* 472 A.2d 33, 38 (Del.Super.1983) (citing 15 Williston, Contracts § 1750A (3d ed. 1972) ). This rule is inapplicable here, for the contract in *James v. Getty Oil* was not a liability insurance contract but a contract governing the business relationship between Getty Oil and Catalytic, Inc. The contract clause at issue was an indemnity clause which purported to require Catalytic to indemnify Getty for losses and expenses resulting from Getty's own negligent or willful acts. *Id.* at 34. The court held that "to the extent ... [the clause] seeks to indemnify Getty against its willful acts, as opposed to its negligence, the agreement is unenforceable." *Id.* at 38.

**4.** Moreover, since Congress has expressly left insurance regulation to the states, *see Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946), a federal court should be even more cautious than its state counterpart in pronouncing on a state's "public policy" regarding insurance.

*alia,* (a) "you and your relatives who live with you," (b) "anyone under 21 who is in your care and/or in the care of your relatives who live with you," and (c) "anyone using your motor vehicles or equipment with your permission who is covered under one of your basic policies." Dkt. 15A, at B–1. "You," "your," and "yours" means "the person named in the Declarations and his or her spouse who lives in the same household." *Id.*

The persons named in the Declaration are Edward and Naomi Jefferson, who therefore are referred to as "you" in the policy. Andrew Jefferson, who at the time of the accident was under 21 and lived with his parents, was a "covered person" within the meaning of the policy.

Under the "Exclusions and Restrictions" section, the policy reads "We do not provide coverage for ... [a]nyone except you for accidents involving a motor vehicle which any other covered person owns...." *Id.* That is, the policy "do[es] not provide coverage for [a]nyone except [Edward and Naomi Jefferson] for accidents involving a motor vehicle which [Andrew Jefferson] owns...."

It is not disputed that Andrew Jefferson owned the motor vehicle involved in the accident. Yet despite the apparently clear language foreclosing liability under this policy, plaintiff argues the automobile accident involving Andrew Jefferson is covered by the policy, in reliance on the "doctrine of reasonable expectations" adopted by the Delaware Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Johnson,* 320 A.2d 345, 347 (Del.1974).

According to this doctrine, an insurance policy is read "to effectuate the reasonable expectations of the average member of the public who buys it," *Hallowell,* 443 A.2d at 926 (quoting *Kievit v. Loyal Protective Life Ins. Co.,* 34 N.J. 475, 170 A.2d 22, 30 (1961)), "so far as its language will permit." *Hallowell,* 443 A.2d at 927 (quoting *Cooper v. Government Employees Ins.*

*Co.,* 51 N.J. 86, 237 A.2d 870, 873 (1968)). The court held the doctrine of reasonable expectations is consistent with the general rules governing construction of insurance contracts. *Hallowell,* 443 A.2d at 927. The doctrine therefore applies only if the policy terms "are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away what is written in large print." *Id.*

At issue in *Hallowell* was whether the term "insured motorist" included an "underinsured motorist." Focusing on the statutory language requiring uninsured motorist coverage, the Delaware Supreme Court concluded the term "uninsured" was not ambiguous and therefore found that uninsured motorist coverage provided protection only when the tortfeasor had no insurance. *Id.* at 928.[5]

Plaintiff argues that the policy here is "ambiguous or conflicting" on whether Andrew Jefferson is covered by the Continental policy, and that the exclusion section purports to take away coverage explicitly provided. Plaintiff asserts this exclusion is "buried within the policy." Dkt. 16, at 1.

The Court finds no merit to plaintiff's contentions. An insured is obligated to read his or her insurance contract, and is bound by the provisions thereof if they are clear and unequivocal. *Hallowell,* 443 A.2d at 928. The exclusion section was announced by boldface print, and the wording was phrased in lay terms. Since there is no ambiguity, the doctrine of reasonable expectations does not apply. The Court holds as a matter of law that the Continental policy does not provide liability insurance for Andrew Jefferson in an accident involving his car.

**Conclusion**

Andrew Jefferson will be granted a declaratory judgment that the terms of his automobile liability insurance policy with Valley Forge include liability for punitive damages. Conversely, Valley Forge will

---

**5.** The court recognized this result was "illogical and unfair," *Id.* at 929, but declined to interfere with what it perceived to be a matter for legislative action. Instead, the court urged the Delaware General Assembly to consider corrective legislation. *Id.*

be denied a declaratory judgment. Continental will be granted a declaratory judgment that its excess liability with Edward and Naomi Jefferson does not cover this accident. Williams will be denied summary judgment for $50,000 against Continental, but will be granted summary judgment for $50,000 against Valley Forge.

Submit order on notice within 20 days.

## OPINION ON REARGUMENT

On January 16, 1986 this Court issued an opinion holding, *inter alia,* that the Delaware Supreme Court would refuse to decide whether Delaware public policy prohibited an insurer from paying punitive damages assessed against its insured where the insurance contract permitted the payment of punitive damages. Instead this Court predicted the Delaware Supreme Court would defer to the State legislature. Unknown to the Court, and presumably unknown to counsel, the Superior Court of the State of Delaware, an intermediate State court sitting as a court of original jurisdiction, had issued an opinion on January 10, 1986 addressing this issue. That decision, *Whalen v. On-Deck, Inc.,* Civil Action No. 80–C–JN–12 (Del.Super. Jan. 10, 1986), concluded that Delaware public policy did prohibit an insurer from paying punitive damages assessed against its insured. On January 22, 1986 Valley Forge Insurance Co. and Continental Casualty Co. sought reargument based on the *Whalen* decision. For the reasons given below, the motion for reargument will be denied.

**Analysis**

 Where a state's highest court has not spoken, a federal court sitting in diversity has a duty to decide a case as it believes the state's highest court would have done. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981). Because *Whalen v. On-Deck, Inc., supra,* is the only Delaware decision to address the same question as that answered in *Valley Forge,* the *Whalen* opinion should be examined for whatever guidance it offers as to how the Delaware Supreme Court would have

ruled. As the decision of a lower state court however, *Whalen* is not controlling upon a federal court.

[A]lthough a federal court in a diversity action may not ignore a decision of an intermediate state court as to matters of state law, it is not bound by it, if after analysis it believes the state's highest court would hold otherwise. This is especially true when the intermediate court is sitting as a court or original jurisdiction.

*Blake v. Kline,* 612 F.2d 718, 723 (3d Cir. 1979).

After examining both opinions, I continue to believe that the *Valley Forge* opinion is the more accurate prognostication of how the Delaware Supreme Court would rule. The Superior Court in *Whalen* did not address the issue whether the Delaware Supreme Court would relieve an insurer of liability on its contract on public-policy grounds, or would instead uphold the contract and defer to the State legislature on the public-policy argument.

The opinion in *Valley Forge* first treated the question whether the insurance contract at issue permitted the payment of punitive damages assessed against its insured. It was found the contract was ambiguous. Faced with the ambiguity, I concluded that under Delaware law the contract must be construed against the insurer to make it liable for punitive damages. The next question examined was whether Delaware public policy prohibited an insurer from paying punitive damages assessed against its insured. There being no Delaware Supreme Court cases on point, the opinion focused on whether the Delaware Supreme Court would pronounce an insurance contract against public policy or would instead defer to the Delaware State legislature on that type of decision. I concluded the Delaware Supreme Court would refuse to declare such a provision contrary to public policy and instead would defer to the Delaware General Assembly as the proper body to declare public policy for the State.

The Superior Court in *Whalen v. On-Deck, Inc.,* Civil Action No. 80–C–JN–12 (Del.Super. Jan. 10, 1986), analyzed the issue whether an insurer is liable for punitive damages assessed against its insured in a manner quite different from that of *Valley Forge.* The Superior Court discussed briefly the terms of the insurance contract at issue in *Whalen,* but came to no conclusion on whether the contract permitted payment of punitive damages. Instead, the Superior Court advanced immediately to whether an insurer's payment of punitive damages assessed against its insured would violate Delaware's public policy. The court held that Delaware public policy prohibited an insurer from paying punitive damages, because this would frustrate the deterrent purpose underlying punitive damages. *Whalen,* slip op. at 7. The court did not treat the question of which branch of government should make this public-policy decision.

The *Whalen* court found inapposite *Reynolds v. Willis,* 209 A.2d 760 (Del. 1965), relied on by this Court in its opinion. It is quite correct, as the Superior Court observed, that the *Reynolds* court did not have before it the question whether an insurer is liable for punitive damages assessed against its insured. As pointed out in the *Valley Forge* opinion, however, the importance of *Reynolds* is that it indicates the reluctance of the Delaware Supreme Court to pronounce on matters of public policy.

I continue to believe that the Delaware Supreme Court would defer to the wisdom of the legislature on this particular question, as it has on several other controversial issues of public policy. *See, e.g., McGraw v. Corrin,* 303 A.2d 641, 644 (Del. 1973) (adhering to contributory-negligence standard and leaving to Legislature the decision to adopt comparative-negligence standard); *State v. Dickerson,* 298 A.2d 761, 767–68 (Del.1972) (finding retention or abolition of capital punishment to be a "decision of the people of this State, speaking through their chosen representatives in the General Assembly"); *State v. Cannon,* 190 A.2d 514, 517 (Del.1963) (refusing to hold

that whipping was a cruel and unusual punishment, noting instead that the General Assembly was "an effective force to bring about change" in the criminal laws). As the Delaware Supreme Court stated in *State v. Cannon, supra,* at 518:

> We think the standards of present day society are to be determined by the expressions of that society, itself, and not by an expression of the individual opinions of members of the judiciary. This standard must be a collective one and it can be determined only by an expression of views from the people which make up that society. The only manner in which such an expression can be made is through the action of duly elected representatives of the Society whose standard is to be applied.

I recognize that both Judge O'Hara of the Delaware Superior Court and myself have engaged in the hazardous business of predicting what the Delaware Supreme Court would do on an issue on which it has not spoken. Moreover, since we reached diametrically opposed conclusions, only one of us can be correct. The issue cannot be determined with certainty until the Delaware Supreme Court has occasion to address the issue. While recognizing I could be in error (as could Judge O'Hara), I continue to adhere to the belief that the Delaware Supreme Court would not pass upon the issue whether a provision in a insurance contract for payment of punitive damages assessed against its insured is against public policy.

**Conclusion**

The motion for reargument will be denied.