ST. PAUL FIRE & MARINE INSURANCE COMPANY AND CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, PLAINTIFFS v. FREEMAN-WHITE ASSOCIATES, INC. AND WILLIAM FUNDERBURK, DEFENDANTS, AND THIRD-PARTY PLAINTIFFS v. McCARTHY BROTHERS COMPANY, THIRD-PARTY DEFENDANT

No. 462A87

(Filed 6 April 1988)

Architects § 3— collapse of building—alleged negligence by architect—all risk insurance—whether owner waived claim against architect

    In an action alleging negligence and breach of contract in providing architectural services for a hospital which collapsed during construction, the trial court erred in dismissing the complaint by finding that, as a matter of law, the owner had waived any claim it may have had against the architect for property damage resulting from alleged negligence to the extent the owner had obtained all risk coverage for property damage during construction where the pertinent provisions in the contract between the owner and the architect are conflicting and ambiguous as to whether the owner waived all claims against the architect for all damage against which the owner had insured itself or whether waiver was negated by a provision requiring the architect to provide its own insurance coverage for damages caused by its own errors and omissions.

    Justice WEBB dissenting.

    Chief Justice EXUM joins in this dissenting opinion.

APPEAL by defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 86 N.C. App. 431, 358 S.E. 2d 99 (1987). That decision reversed and remanded an Order entered 20 May 1986 in MECKLENBURG Superior Court, by *Saunders, J.*, granting defendants' N.C.R. Civ. P. 12(b)(6) motion and dismissing plaintiffs' complaint which al-

leged defendants' negligence and breach of contract in providing architectural services during construction of plaintiff's hospital building. Heard in the Supreme Court 11 February 1988.

*Yates, Fleishman, McLamb & Weyher, by Barbara B. Weyher and Gary R. Poole, for plaintiff-appellees.*

*Griffin, Cochrane, Marshall & Elger, by Luther P. Cochrane, Jeanette R. Hait, and John Dean Marshall, Jr., and Jones, Hewson & Woolard, by Robert G. Spratt, III, for defendant-appellants.*

MEYER, Justice.

This contract issue comes before us in the setting of the construction industry. The question with which the Court is presented is whether certain provisions concerning insurance coverage in the contract between plaintiffs and defendants are ambiguous. The majority in the Court of Appeals concluded that they were. We affirm.

On 26 April 1983 defendant Freeman-White ("Architect") entered into a contract with plaintiff Charlotte-Mecklenburg Hospital ("Owner") to design a 130-bed hospital and medical center. Defendant Funderburk, who had consulted with Freeman-White on structural matters for many years, assisted in designing the project.

On 21 November 1983, while subcontractors of the construction manager were pouring concrete to form the project's south-wing roof, the south-wing collapsed, causing property damage in excess of $10,000.00. The Owner received compensation for damage to the project, which was covered by the Owner's Builders' Risk insurance policy, issued by plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul").

The Owner and St. Paul as insurer-subrogee filed a complaint against the Architect, asserting two theories of recovery: (1) the Architect's negligence caused the collapse, and (2) the Architect had breached its contract with the Owner. The Architect moved for a Rule 12(b)(6) dismissal, alleging that the contract documents showed that the Owner had agreed to waive its rights of recovery against the Architect for this property damage. The trial court

granted the Architect's motion and on 20 May 1986 entered an order dismissing the Owner's complaint.

The Owner appealed to the Court of Appeals. The majority of the panel in that court concluded that the contract provisions at issue appeared inconsistent with each other, or at least susceptible to more than one interpretation; thus, the case should have gone to the jury and dismissal on the Rule 12(b)(6) motion was error. The trial court's order was reversed and the case remanded. One judge dissented, stating that when the contract is construed as a whole, the provisions relating to insurance coverage are unambiguous, so that the waiver provisions of the policy prevented the Owner from bringing the action.

The contract between the Owner and the Architect was the 1980 Edition of the American Institute of Architects, AIA Document B141/CM, Standard Form Agreement Between Owner and Architect, Construction Management Edition, with some modifications. This contract incorporated by reference, in part, the 1980 Edition of the American Institute of Architects, AIA Document A201/CM, General Conditions of the Contract for Construction, Construction Management Edition. The contract is lengthy and detailed, but our perusal of the pertinent provisions that follow convinces us that the Court of Appeals' decision was correct.

Paragraph 11.4 of the contract between the Owner and the Architect (AIA Document B141/CM) provides:

> The Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other, for damages covered by any property insurance during construction, as set forth in the 1980 Edition of AIA Document A201/CM, General Conditions of the Contract for Construction, Construction Management Edition. The Owner and the Architect shall each require appropriate similar waivers from their contractors, consultants and agents.

The applicable waiver provisions in the General Conditions incorporated by reference in the preceding paragraph constitute subparagraph 11.3.6:

> The Owner and the Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors,

agents and employees of each other, and (2) the Architect, the Construction Manager and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. The foregoing waiver afforded the Architect, the Construction Manager, their agents and employees shall not extend to the liability imposed by Subparagraph 4.18.3. The Owner or the Contractor, as appropriate, shall require of the Architect, the Construction Manager, separate contractors, Subcontractors and Sub-subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of all other parties enumerated in this Subparagraph 11.3.6.

Paragraph 11.3.1 of the General Conditions of the Contract for Construction (AIA Document A201/CM) provides in part:

Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Construction Manager, the Contractor, Subcontractors and Sub-subcontractors in the Work, and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

By separate document, the parties added a paragraph numbered 11.5 to the contract between the Owner and the Architect (AIA Document B141/CM). Paragraph 11.5 provides:

The Architect shall maintain in force an Architects and Engineers Professional Liability Insurance Policy providing coverage for errors and omissions of professional services in architecture, building design, HVAC, electrical, mechanical, structural engineering, that might be made pursuant to this Agreement and protecting the Owner from the direct and consequential results of such errors or omissions. Such insurance shall provide coverage on an occurrence and ag-

gregate basis in amounts not less than $1,000,000 and $1,000,000 respectively. This insurance shall be maintained in force during the life of the Project and for that period of time following the date of final completion during which an action for professional liability on the part of the Architect for this Project may be brought by the Owner under North Carolina Law. The Architect may provide such insurance protection to the Owner through commercial insurance or other financial mechanisms acceptable to the Owner, and the Owner's acceptance shall not be unreasonably withheld.

The precise question with which the Court is presented is whether the contract documents clearly establish that the Owner agreed to waive its rights against the Architect, looking only to the Builders' Risk insurance policy it agreed to procure to cover damage to the project itself. Close examination of the pertinent contract provisions reveals, as the Court of Appeals majority pointed out, that they appear to be susceptible to more than one interpretation: (1) that the true intent of the parties was that the Owner would waive all claims against the Architect for damage against which the Owner had insured itself, or (2) that the Architect would provide its own insurance coverage for damage caused by its own errors and omissions, thereby negating waiver as to such losses. This conclusion is illustrated by the parties' contentions.

Plaintiffs contend that the provisions of the Owner-Architect Agreement and the General Conditions reveal an intent by the parties that defendants, or their liability insurer, would bear the risk of loss for any property damage resulting from defendants' negligence in rendering architectural services to the Owner. They point to Paragraph 11.5, set out above, which requires the Architect to obtain professional liability insurance to protect the Owner from the direct and consequential results of the Architect's errors and omissions arising out of professional services to the Owner. Paragraph 11.5 also provides that the insurance will be maintained for the period of time "during which an action for professional liability on the part of the architect for this Project may be brought by the Owner under North Carolina Law." Plaintiffs argue that this language demonstrates the parties' intention that the Owner and St. Paul, through subrogation, could pursue a negligence claim against the Architect.

Paragraph 11.3, set out above, requires the Owner to purchase and maintain property insurance on the project, including "all risk" coverage. The provision includes a list of the parties to be covered by this insurance, but, as plaintiffs point out, the Architect is not one of them. Finally, plaintiffs contend that the waiver in Subparagraph 11.3.6, set out above, is modified because it does not extend to liability imposed by a further subparagraph 4.18.3 relating to:

> (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving or the failure to give directions or instructions by the Architect or the Construction Manager, their agents or employees, provided such giving or failure to give is the primary cause of the injury or damage.

Defendants, on the other hand, contend that plaintiffs' interpretation of the contract gives no meaning to Paragraph 11.4 which contains the waiver language upon which this controversy centers. Paragraph 11.3, in conjunction with Paragraph 11.4, they argue, specifically shifts the risk of loss to the Owner's insurer, while simultaneously insuring the project and waiving all rights to subrogation. Defendants contend that the professional liability insurance policy that Paragraph 11.5 requires the Architect to maintain is not a substitute for the Owner's Builders' Risk policy. Instead, it signifies the parties' intent that the Architect would bear the risk of loss due to damage other than to the work itself which resulted from its negligence.

Defendants point to subparagraph 4.18.3 which incorporates by reference the entire Paragraph 4.18, and provides, in subparagraph 4.18.1, that the Contractor shall indemnify the Owner for its negligent action resulting in "claims, damages, losses or expenses . . . attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom." They argue that since the indemnity provision applies to damages other than to the work itself, it applies to claims other than those that are covered by the Owner's property insurance. Therefore, the indemnity provision does not affect the waiver in Paragraph 11.4.

The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous. *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 630, 319 S.E. 2d 217, 223 (1984). "An ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E. 2d 907, 908 (1981). We conclude that the contract language is conflicting and ambiguous as to the parties' intent regarding whether the Owner waived all claims against the Architect for property damage resulting from its alleged negligence in rendering architectural services.

By allowing defendants' motion to dismiss plaintiffs' complaint, the trial court found that, as a matter of law, plaintiffs had waived any claim they may have had against defendants for their negligence to the extent plaintiffs had obtained all risk insurance coverage for property damage during construction. This was error. A motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) of the Rules of Civil Procedure, should not be granted unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Snyder v. Freeman*, 300 N.C. 204, 266 S.E. 2d 593 (1980); *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970).

Because of the ambiguity apparent in the contract's insurance coverage provisions as to plaintiffs' waiver, we affirm the Court of Appeals' majority holding that the trial court erred in dismissing plaintiffs' action against defendants.

Affirmed.

Justice WEBB dissenting.

I dissent from the majority. I agree with Judge Arnold's dissenting opinion in the Court of Appeals. I believe Paragraphs 11.3.6 and 11.4 clearly and unambiguously provide that the owner waives all rights against the architect for damages covered by property insurance during construction. Paragraph 11.5 does not say it negates this waiver and I do not believe we should read it so that it may do so. I believe a contract should be read so that if possible all its provisions have meaning.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect. The foregoing rules are applicable in the interpretation of building and construction contracts." 17 C.J.S., Contracts, § 297.

*Robbins v. Trading Post*, 253 N.C. 474, 477, 117 S.E. 2d 438, 440-41 (1960). A contract must be construed as a whole, considering each clause and word with reference to other provisions and giving effect to each if possible by any reasonable construction. *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 320 S.E. 2d 892 (1984). *See generally* 4 S. Williston, *A Treatise on the Law of Contracts*, § 618(3) (3d ed. 1961).

Paragraph 11.5 provides the architect shall maintain liability insurance for errors and omissions to protect the owner "from the direct and consequential results of such errors and omissions." This insurance can protect the owner in ways that are not covered by Paragraphs 11.3.6 and 11.4. One example is protection from liability to third parties. I believe we should interpret Paragraph 11.5 to say it requires insurance by the architect to protect the owner for risks not covered by Paragraphs 11.3.6 and 11.4. In that way we can give effect to all provisions of the contract.

When a provision of a contract deals specifically with a subject, I do not believe we should say that provision may be cancelled by a second provision of the contract when the second provision is not necessarily contrary to the first provision. Construing the contract according to defendants' contentions gives effect to all provisions of the agreement, including the waiver provisions and, therefore, comports with these well established canons of construction. Construing it according to plaintiffs' contentions does not, since this construction nullifies the waiver provisions. Since the contract may be construed so as to give effect to all provisions, it must be so construed if the Court is to follow

its precedents. In such a case there is no ambiguity in the contract. Applying appropriate canons of construction resolves whatever doubt there may be as to the contract's meaning.

Chief Justice EXUM joins in this dissenting opinion.