**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ESSENTIAL HOUSING MANAGEMENT,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

No. 97-2150

v.

THOMAS F. WALKER,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CA-95-375-6)

Argued: January 29, 1998

Decided: June 9, 1998

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded for further proceed-
ings by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James A. Merritt, Jr., BERRY, ADAMS, QUACKEN-
BUCH & STUART, P.A., Columbia, South Carolina, for Appellant.
B. Gordon Watkins, III, KILPATRICK STOCKTON, L.L.P.,
Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Daniel R.
Taylor, Jr., KILPATRICK STOCKTON, L.L.P., Winston-Salem,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity action for recovery on a contract, defendant Thomas F. Walker appeals from the district court's grant of summary judgement for plaintiff Essential Housing Management, Inc. (EHM). Walker first argues that the district court was wrong to deny his motion to amend his answer because EHM did not show it was prejudiced by his delay in seeking to amend. Next, Walker argues that the court incorrectly granted summary judgment for EHM because it misinterpreted the contract on which EHM sued. We reject Walker's first argument because he failed to show good cause for revising the court's scheduling order, which had set a deadline for amendments to pleadings. However, his second argument has merit because the district court's reading of the contract renders some of its language superfluous. Therefore, we affirm part of the district court's order granting summary judgment to EHM, but we vacate the order in part and remand the case for further proceedings consistent with this opinion.

I.

Walker was a general partner in several limited partnerships, each of which owned a low or moderate income housing project in South Carolina. Each partnership hired EHM to manage its project. Under the management agreement that each partnership and EHM entered into (all of the agreements were identical), EHM was obliged to collect rent from the project's residents and deposit it into the project's general operating account. The agreement also required that EHM pay all of the project's operating costs out of this account. One such cost was EHM's compensation, a monthly management fee calculated in accordance with the agreement. The agreement gave EHM the right to take its fees out of the operating account when they came due, without regard to any of the project's other obligations or expenses.

Further, EHM was not required to pay for project operating costs from its own funds.

EHM and the partnerships terminated their relationship in about June 1995. EHM, which is a North Carolina corporation, then brought suit in federal court against Walker, a resident of South Carolina, to recover debts that the partnerships allegedly owed to it. According to EHM, these debts totaled $56,466.02 in unpaid management fees and unreimbursed operating costs, plus interest. EHM claimed that Walker was liable for the full amount of these debts because he was a general partner in each partnership.

Walker filed his answer on May 22, 1996. In a scheduling order of July 18, 1996, the district court established August 15, 1996, as the last date to amend pleadings and January 15, 1997, as the discovery cutoff date. The order scheduled a trial for July 14, 1997.

On December 3, 1996, Walker moved to amend his answer to add a counterclaim. The proposed counterclaim arose out of the same transactions as EHM's claim and was therefore compulsory under Federal Rule of Civil Procedure 13(a). The thrust of the proposed counterclaim was that EHM was not entitled to the fees it sought because it had mismanaged the projects. Judge Osteen denied Walker's motion, noting that the motion came nearly four months after the scheduling order's deadline for pleading amendments and only six weeks before the end of discovery. The judge said that granting the motion would extend discovery and would not allow the case to remain on the July trial docket. However, the judge made no finding that granting the motion would prejudice EHM.

Walker made a motion for reconsideration that Judge Osteen also denied. This time the judge found that Walker "set forth no sufficient reason to indicate that the basis for the amendment was not known in sufficient time to comply with the original schedule." In fact, the judge noted that Walker's counsel had left the case unattended for a substantial period of time with no apparent excuse for doing so. Finally, the judge found that allowing Walker to assert a counterclaim at that late date would prejudice EHM because it "would not have sufficient discovery and preparation time."

3

At the pretrial conference Walker again moved for reconsideration of his motion to amend his answer to add a counterclaim. Judge Tilley denied this motion. The judge held that Walker had not complied with the deadline for amendments to pleadings set by the scheduling order and that he had shown "no justification" for his failure to do so. The judge reasoned that the court's overall schedule depended "on people doing what they should do in a timely fashion."

On July 14, 1997, the day trial was to begin, EHM moved for summary judgment. It argued that the sole issue was the proper interpretation of the management agreements' provision for compensation and indemnification to EHM. The crux of the parties' dispute, it said, was the extent to which this provision constituted a guarantee by the partnerships that EHM would be repaid for costs it incurred in operating the housing projects. According to EHM, each management contract made the relevant partnership liable for all costs of operating the projects, including EHM's monthly management fees. As a result, EHM argued, Walker was liable to EHM for all unreimbursed costs and all unpaid management fees.

Accompanying EHM's motion for summary judgement was an affidavit from EHM's chief operating officer. She attested to the existence of the management agreements between EHM and the partnerships, explained her understanding of how EHM's monthly management fees were calculated, and claimed that the management agreements' indemnification provision made the partnerships liable to EHM for all costs EHM incurred in operating the housing projects, including its management fees. Attached to this affidavit were business records that purported to show that Walker's partnerships owed EHM a total of $59,466.02 for uncollected management fees and unreimbursed out-of-pocket expenses.[1] However, the EHM official

_____

[1] In her affidavit the EHM official segregated these costs into three categories: (1) management fees owed to EHM, (2) "on-site employee costs," that is, the cost of a "site manager" at each housing project, and (3) other costs paid by EHM to third parties. However, under the management agreements the second category was clearly a subcategory of the first, since the agreements included EHM's "fee" for providing a site manager as part of EHM's total compensation. Thus, we consider EHM's site manager costs to be management fees.

4

did not say whether or to what extent there were funds available in the projects' general operating accounts to pay these costs and fees at the time they came due.

Walker moved for judgment on the pleadings based on a different reading of the agreements' compensation and indemnification provision.**2** Under that provision, Walker argued, if EHM did not pay itself out of each project's general operating account when there were funds in the account, it could not look to the partnership for payment at a later time. According to Walker, only when a project generated insufficient rent to pay its own operating costs and management fees did the partnerships guarantee payment of those costs.

Finding that the language of the management agreement was unambiguous, Judge Tilley determined that there were no factual issues in dispute. The judge adopted EHM's reading of the agreements' compensation and indemnification provision and rejected Walker's reading. The judge held that the agreement required the partnerships, and therefore Walker as general partner, to indemnify EHM for all unpaid management fees and all unreimbursed costs from operating the projects. As a result, the court granted summary judgment for EHM in the amount of $60,318.60 (including interest) and denied Walker's motion for judgment on the pleadings.

Walker appeals the district court's denial of his motion to amend and its grant of summary judgment for EHM.**3**

_____

**2** Walker also moved to dismiss EHM's complaint for failure to set forth sufficient facts to support its contract claim and for failure to allege performance of conditions precedent to the management agreements. The district court denied this motion.

**3** Walker also appeals the denial of his motion to dismiss EHM's complaint. We find no merit to this contention. EHM's complaint was spare and inartfully drafted, but it met the liberal standard of the federal rules, which simply require that the plaintiff set forth a"short and plain statement" of the facts underlying his claim for relief. See Fed. R. Civ. P. 8(a). Further, by answering EHM's complaint with a general denial, Walker waived his right to raise EHM's failure to plead the fulfillment of conditions precedent to the management agreements. See Fed. R. Civ. P. 9(c); Trinity Carton Co. v. Falstaff Brewing Corp., 767 F.2d 184, 192 (5th Cir. 1985).

5

II.

A.

The first issue is whether the district court erred by denying Walker's motion for leave to amend his answer to assert the omitted compulsory counterclaim. We review the denial of such a motion for abuse of discretion. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 940 (4th Cir. 1995).

Walker argues that the Federal Rules of Civil Procedure require that a party be allowed to amend his pleading to assert omitted claims so long as the other party is not prejudiced. This is especially true, he says, when a defendant wishes to assert a compulsory counterclaim that must be raised in the pending action or be forever barred.

Here, Walker claims, Judge Osteen erred by denying his motion because the judge did not find that EHM would be prejudiced by the delay in allowing the amendment. Indeed, Walker argues, EHM could not show prejudice since he (Walker) volunteered to waive his own discovery and to allow EHM expedited discovery. Further, Walker argues that Judge Osteen's later finding (on reconsideration) that EHM would be prejudiced by Walker's delay in amending was clearly erroneous. That finding, Walker argues, was premised solely on his delay in moving to amend, not on any prejudice that EHM might have suffered as a result of the delay.

The federal rules do set a liberal standard for allowing an amendment to assert an omitted counterclaim. When a party "fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f). It is well settled that Rule 13(f) is applied along with Federal Rule of Civil Procedure 15(a), which provides that "leave [to amend] [the pleadings] shall be freely given when justice so requires." Lone Star Steakhouse, 43 F.3d at 940 (first alteration in original). Under these rules "a motion to amend may be denied when . . . allowing the motion would prejudice the nonmovant." Id. However, "delay alone is not [a] sufficient reason to deny leave to amend . . . [absent] prejudice, bad faith, or futility." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509-10 (4th Cir. 1986);

6

see also Foman v. Davis, 371 U.S. 178, 182 (1962) (discussing Rule 15(a)); Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (same); Barnes Group, Inc. v. C & C Prods., Inc., 716 F.2d 1023, 1035 n.35 (4th Cir. 1983) (discussing Rule 13(f)). In addition, a district court has the discretion to deny leave to amend "based upon a balancing of the equities, including whether . . . additional discovery [would] be required, and whether the court's docket [would] be strained." Barnes Group, 716 F.2d at 1035 n.35.

The federal rules' generally permissive position on amendment of pleadings has one important limit, however. When the district court issues a scheduling order that sets a deadline for amendments to pleadings, a party wishing to amend its pleading must comply with that deadline or show good cause for failing to do so. See Fed. R. Civ. P. 16(b). This standard primarily considers the diligence of the party seeking to amend, rather than simply that party's lack of bad faith or the lack of prejudice to the opposing party. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). As a result of Rule 16(a), when a party moves to amend his pleading after the scheduled time for amendments has passed, the party is effectively asking the court both for an amendment to the scheduling order and for leave to amend the pleading. Thus, when a court decides whether to grant a defendant's motion to amend his answer to add a compulsory counterclaim after the scheduled time for amendments has passed, the court must apply both the Rule 16(b) analysis and the Rule 13(f) analysis before allowing the amendment. See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418-19 (11th Cir. 1998); Johnson, 975 F.2d at 608-09; Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1155 (1st Cir. 1992); Forstmann v. Culp , 114 F.R.D. 83, 84-85 (M.D.N.C. 1987). Since Rule 16(b)'s "show good cause" standard is tougher on the movant than Rule 13(f)'s "no prejudice to the opposing party" standard, the effect of reading these two rules together is that the liberal policy of Rule 13(f) only governs motions to amend made before the deadline for amendments set by the district court's scheduling order. Afterwards (so long as the scheduling order is in effect) the movant must meet the more rigorous Rule 16(b) standard before even reaching the Rule 13(f) prejudice issue.

Here, the district court clearly found that Walker did not show good cause for amending the scheduling order. Although neither

7

Judge Osteen nor Judge Tilley couched his conclusion in terms of whether Walker's excuse for the delay constituted "good cause" under Rule 16(b), each judge in effect applied the "good cause" test in denying Walker's motion to amend. Both judges referred to the lack of diligence on the part of Walker's lawyer in attending to the case, and both judges explained that counsel's proffered excuse was insufficient justification to warrant allowing Walker leave to amend. We cannot say that these findings are clearly erroneous. In fact, Walker's lawyer admitted at oral argument that he could not show good cause for his delay in seeking to add the counterclaim, since the delay was attributable merely to his heavy workload and personnel changes at his law firm. Therefore, the district court did not abuse its discretion in denying Walker's (implicit) motion to amend the scheduling order.

Since we hold that the district court was correct in refusing any adjustment to the scheduling order under Rule 16(b), we need not decide whether the court correctly denied Walker's motion to amend his answer under the more liberal standard of Rules 13(f) and 15(a). We note, however, that while it would have been improper for the district court to deny Walker's motion to amend solely due to his delay, the court did not base its decision on delay alone. In denying Walker's motion for reconsideration, Judge Osteen found that granting Walker leave to amend would prejudice EHM because it would leave EHM with insufficient time for discovery and trial preparation. Thus, contrary to Walker's claims, Judge Osteen did not find that EHM was prejudiced simply because it had complied with the scheduling order. Further, although Judge Tilley did not mention prejudice to EHM, his reference to the Civil Justice Reform Act and the court's docket pressures showed that he was exercising his discretion under Rule 13(f) to deny Walker's motion to amend in order to avoid unacceptable disruption to the court's docket. Thus, the court clearly relied on proper considerations, not merely delay alone, in deciding to deny Walker's motion to amend.

In the circumstances, the district court did not abuse its discretion in adhering to the scheduling order, which meant that Walker could not amend his answer to assert a counterclaim.

B.

The second issue on appeal is whether the district court should have granted summary judgment for EHM. Summary judgment is

8

proper only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); Allstate Fin. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991). We review a district court's grant of summary judgment de novo. See Denzler v. Questech, Inc., 80 F.3d 97, 101 (4th Cir. 1996).

Here, the dispositive question is whether the district court correctly interpreted the management agreements between Walker's partnerships and EHM. The relevant paragraph is as follows:

> VII. [EHM]'s Compensation . . . and Indemnification.
>
> A. [EHM]'s Compensation. [EHM] will be compensated for its services . . . by monthly fees, to be paid from the [general operating account] and treated as a project operation and maintenance expense. . . . Such fees will be payable . . . each month . . . .
>
> . . . .
>
> C. [EHM]'s Indemnification . . . .[The partnership] agrees that [EHM] shall have the right at all times to secure payment of its compensation, as provided for under Paragraph VII A of this Agreement, from the [general operating account], immediately when such compensation is due and without regard to other project obligations or expenses . . . . Moreover, [the partnership] hereby indemnifies [EHM] and agrees to hold it harmless with respect to project costs, expenses, accounts, liabilities and obligations . . . and further agrees to guarantee to [EHM] the payment of its compensation under Paragraph VII A of this Agreement . . . to the extent that the Project's [general operating account] is insufficiently funded for that purpose . . . .

(Emphasis added). On appeal neither party challenges the district court's conclusion that paragraph VII is unambiguous. Thus, we interpret the provision as a matter of law. See Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993).

9

EHM argues that the meaning of paragraph VII is clear: each partnership "indemnifie[d] [EHM] and agree[d] to hold it harmless" for all "project costs." This broad language, EHM says, indicates that each partnership guaranteed EHM reimbursement of all of EHM's costs in operating the housing project. Included in such costs, EHM argues, were its monthly management fees, which were deemed "project operation" expenses under paragraph VII.A. According to EHM, the indemnification obligation was the same regardless of whether EHM took advantage of its right (under paragraph VII.C.) to take its management fees from the partnership's general operating account before paying other project costs. If EHM did not take its fees from a project's operating account, the partnerships were still liable for 100 percent of its fees.

Walker disagrees. Walker contends that under the plain language of paragraph VII.C., the partnerships "guarantee[d]" EHM "the payment of its compensation" only "to the extent that" each project's general operating account "was insufficiently funded for that purpose" at any time after EHM's fees came due. The gist of this limited indemnification provision is clear, Walker argues: each partnership guaranteed EHM its monthly management fees and other costs for operating its housing project only when the rent from the project (which EHM deposited into the project's operating account) was insufficient to cover these fees and costs. According to Walker, EHM could choose not to take its compensation when there were sufficient funds in the account to pay it, but EHM did so at its own risk, since there might not be sufficient funds in the account at a later time to pay the fees. Walker also argues that this limited guarantee applied to all operating costs, including amounts due to third parties. EHM had no obligation to use its own funds to pay operating costs, and if EHM did so, Walker argues, it could seek reimbursement from the partnerships only if it exhausted the funds in the project's general operating account.

If we adopted Walker's interpretation of the management agreements, we would have to vacate the district court's order granting summary judgment to EHM for both management fees and expenses paid to third parties. Under his interpretation of paragraph VII.C., calculating the amount of fees each partnership owed to EHM required knowing whether the funds in the operating account covered EHM's

management fees at any point after they came due. Thus, the appropriate calculation involved subtracting from each monthly management fee that EHM was authorized to pay itself all monies that were later available in the project's operating account to pay that fee. In other words, in order to prove how much (if anything) Walker owed EHM in management fees, EHM would have to prove both the amount of monthly fees it was entitled to at each project and the amount of funds available in each project's operating account at all times after these fees came due. EHM did not attempt to offer proof under Walker's theory, as it offered no evidence of the amount of funds available in the projects' operating accounts.

EHM responds that Walker's reading of paragraph VII.C. is counter-intuitive because it creates an incentive for the project manager to place its own interest in getting paid ahead of the owner's interest in preserving the project's financial health. Under Walker's interpretation, when the funds in the operating account were insufficient to pay both EHM's fees and project costs (such as the mortgage or maintenance), EHM would be forced to pay the former and neglect the latter or risk losing its shirt.

Another reason to reject Walker's reading of paragraph VII.C. is that it essentially renders the indemnification clause a nullity. If (as Walker argues) paragraph VII.C. allowed EHM to collect its fees from the partnership only if the money in the project's operating account was insufficient to cover these fees at any time after the fees came due, then EHM was forced to collect its fees bit by bit, as rent money trickled in each month. Under Walker's interpretation, the partnership was not even liable for past due fees so long as the project continued to generate money as rent. If the rent received one month was not enough to cover that month's fees, in Walker's view, EHM was forced to wait for payment of its past due fees from the next month's rent (and the next month's rent, etc.). Under this view, EHM could never turn to the partnerships for payment of its past due fees, unless the project had no income for the foreseeable future. This absurd result could not have been intended by the parties.

Yet, EHM's reading of paragraph VII.C. is also flawed. First, EHM's interpretation renders an entire clause superfluous. In EHM's view, both the management fees and expenses paid to third parties are

11

covered by the partnerships' promise to "indemnif[y] [EHM] . . . with respect to project costs." However, that sentence does not end there. It also provides that the partnerships "further agree[ ] to guarantee to [EHM] the payment of its compensation to the extent that the Project's [general operating account] is insufficiently funded for that purpose." EHM's interpretation gives this second clause (which Walker relies on so heavily) essentially no meaning. When asked at oral argument about the meaning of this clause, EHM's lawyer said it was merely a "further guarantee" by the partnerships. But if the first part of the sentence guaranteed EHM full payment of both management fees and expenses EHM paid to third parties, then this more limited guarantee was completely superfluous. Under North Carolina law we must favor an interpretation of a contract that gives meaning to every clause over an interpretation that does not. See Maddox v. Colonial Life and Accident Ins. Co., 280 S.E.2d 907, 908 (N.C. 1981); Marcoin, Inc. v. McDaniel, 320 S.E.2d 892, 897 (N.C. App. 1984). Thus, we must reject EHM's interpretation if another reasonable reading of paragraph VII.C. gives effect to both clauses.**4**

The second flaw with EHM's reading of paragraph VII is that it requires us to adopt a reading of the word "indemnify" that is at odds with its common meaning. The verb "to indemnify" is usually used to mean "to reimburse" for a cost or a loss. See, e.g., Black's Law Dictionary 769 (6th ed. 1990). But here, EHM urges that the partnerships in paragraph VII.C. "indemnified" EHM for its management fees, which EHM never had in the first place. This is not reimbursement. In fact, it makes more sense in this situation to say that the partnerships "guaranteed" EHM its fees. That is, they promised to answer for the fees if the general operating account could not pay them, see id. at 705 (defining guarantee). Under North Carolina law we must give words in a contract their common meaning unless the agreement or its surrounding circumstances tells us otherwise. See American Cas. Co. v. Gerald, 369 F.2d 829, 834 (4th Cir. 1966); Baker v. Whitley, 361 S.E.2d 766, 767 (N.C. App. 1987). Here, there is no indication that the parties intended for a meaning other than the common meaning to control. Therefore, we should look to the word "guarantee" rather than the word "indemnify" to describe the partnerships' promise regarding payment of fees.

_____
**4** The parties agree that North Carolina law governs here.

12

Since EHM would make the "indemnifies" clause do all the work and leave the "guarantee" clause with no purpose, its interpretation of paragraph VII fails. We reject Walker's interpretation for the converse reason: he asks the "guarantee" clause to do all the work and renders useless the "indemnifies" clause. Instead, we adopt a third interpretation of paragraph VII. We read the "indemnifies" clause to cover EHM's expenses to third parties (for which it requests reimbursement) and the "guarantee" clause to cover EHM's management fees (for which it seeks payment in the first instance). Thus, we hold that, although Walker's partnerships did not require that EHM meet the housing projects' costs and expenses out of its own pocket, the partnerships agreed to repay EHM for any of its own funds it spent to operate the projects. In addition, we reject Walker's contention that the "guarantee" clause required EHM to receive its management fees bit by bit. Instead, the more natural reading of that clause is that each partnership guaranteed EHM any part of its fee that the project's general operating account did not cover at the time the fee came due. If the operating account was insufficient to pay the fee on the date the fee was due, paragraph VII.C. allowed EHM to turn to the partnership for payment without waiting for the next month's rent to make up the rest of its fee.

Our reading is not, as EHM would contend, absurd. It is a sensible way for a general partner to limit his liability to his management company. Further, our reading does not, as EHM would argue, turn EHM's right to take its compensation out of the operating account into a duty to do so. Rather, this arrangement simply gives EHM the incentive to exercise its right. In fact, we believe that our reading is the only plausible reading of the contract, since it gives effect to both key clauses in paragraph VII.C. and gives the word "indemnify" its common meaning.

III.

Since we hold that paragraph VII.C. rendered the partnerships liable for all of EHM's unreimbursed out-of-pocket expenses, we affirm the district court's award of a sum to cover those expenses (plus interest) to EHM. However, since we hold that the partnerships guaranteed EHM its management fees only "to the extent that" each project's operations account was insufficient to pay those fees when they came

13

due, we vacate the district court's award of management fees to EHM and remand for further proceedings on that portion of EHM's claim.

The district court's orders are therefore

<u>AFFIRMED IN PART, VACATED IN PART, AND</u>
<u>THE CASE IS REMANDED FOR FURTHER PROCEEDINGS</u>.

14