# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ACSTAR INSURANCE COMPANY,
　　　　　*Petitioner-Appellant,*

v.

HOLMES P. HARDEN, Trustee,
　　　　　*Respondent-Appellee.*

No. 00-2446

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(BK-98-02674-5-BR, BK-98-02674-5-ATS)

Argued: May 7, 2001

Decided: August 15, 2001

Before MICHAEL and GREGORY, Circuit Judges, and
Benson E. LEGG, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Lance P. Martin, WARD & SMITH, P.A., Greenville, North Carolina, for Appellant. James T. Johnson, LEWIS & ROBERTS, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael P. Flanagan, Paul A. Fanning, WARD & SMITH, P.A., Greenville, North Carolina, for Appellant. James A. Roberts, III, LEWIS & ROBERTS, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

   Acstar Insurance Company and United Coastal Insurance Company (together, "Acstar") posted a payment bond in a lawsuit that the Securities and Exchange Commission (SEC) brought against International Heritage, Inc. and International Heritage, Incorporated (together, "IHI") in Georgia. IHI then filed for bankruptcy in North Carolina, and the SEC filed a proof of claim. The SEC, the bankruptcy trustee, and Acstar entered into a court-approved settlement that, among other things, reduced Acstar's payment obligation under the bond. As part of the settlement, the court ordered the trustee and Acstar to execute mutual releases. Acstar thereafter filed an amended proof of claim for the amount of the bond payment that IHI's collateral did not cover and asserted a security interest in the proceeds of one of IHI's insurance policies. The bankruptcy court disallowed Acstar's amended claim, and the district court affirmed. Because the release that the bankruptcy court ordered Acstar to execute bars Acstar from asserting any additional claims against the bankruptcy estate, we affirm.

I.

   In March 1998 the SEC brought a securities fraud action against IHI, a consumer goods marketing organization, in the Northern District of Georgia. At the outset of the SEC suit the Georgia district court ordered IHI to post a $5 million cash bond to assure that IHI's liquid assets were not diminished during the pendency of the action and that funds were available to satisfy any judgment issued against IHI. After IHI posted the cash bond, it sought permission from the court to substitute the cash bond with a payment bond. IHI entered into an agreement with Acstar by which Acstar would post the payment bond. Under the agreement Acstar received $3.5 million in collateral and a $150,000 fee for its services. The district court approved the substitution.

In November 1998 IHI filed for bankruptcy in the Eastern District of North Carolina. Holmes P. Harden was appointed bankruptcy trustee. The SEC filed a proof of claim with the bankruptcy court in the amount of $6,450,000, representing the SEC's estimate of IHI's fraud that was the subject of the Georgia action. Harden entered into negotiations with the SEC that resulted in settlement terms that would be submitted for court approval. Thereafter, in January 1999 Harden applied to the bankruptcy court for permission to enter into a "Stipulation and Consent to Final Judgment of Permanent Injunction." Acstar filed an objection to Harden's application, arguing that under its payment bond agreement with IHI, Acstar had the exclusive right to settle with the SEC. Acstar also threatened to take legal action against Harden. All of the parties (Harden, the SEC, and Acstar) entered into mediation and reached a more comprehensive settlement in June 1999. Acstar would pay the SEC $4.1 million "in full settlement of its obligations under the SEC bond." A 300-day payment plan was devised, and Acstar was allowed a priority status claim in the bankruptcy action in the amount of $300,000. This "priority" claim is "entitled to be paid before other unsecured, nonpriority claims." 2 William L. Norton, Jr., *Norton Bankruptcy Law & Practice 2d* § 42:1, at 42-3 (1997). The bankruptcy court approved this settlement and ordered Harden and Acstar to execute mutual releases. Acstar was to execute a release that provided:

> For valuable consideration, the receipt of which is hereby acknowledged, [Acstar] and [its] respective successors and assigns do hereby release, forever discharge and promise never to sue Holmes P. Harden, individually, as Chapter 7 Trustee for [IHI], or as a principal in the law firm of Maupin Taylor & Ellis, P.A., or the law firm of Maupin Taylor & Ellis, P.A., their agents, attorneys, employees, officers, directors, and insurance carriers (together referred to as "Harden") for any and all damages and claims arising from or related to the [SEC] civil action . . . including but not limited to Harden's filing of the Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction [the SEC settlement] . . . and any claims relating to the subsequent Consent Order, and any claims against Harden arising from, under, or against Payment Bond No. 7719 dated June 5, 1998 and a related Indemnity

Agreement which were executed in connection with the aforesaid civil action.

Harden was to execute a release that was substantially the same. Harden executed his court-approved release, but Acstar made some unilateral changes on the release it signed.

On August 9, 1999, Harden applied to the bankruptcy court for permission to enter into a settlement agreement with Executive Risk Specialty Insurance Company (ERSIC). ERSIC had issued IHI a "Directors and Officers Liability Insurance Policy," which covers, among other things, securities claims. Harden asserted that the losses from the SEC action were covered under the ERSIC policy. Acstar objected to the proposed settlement between Harden and ERSIC, arguing that Acstar had a security interest in funds paid by ERSIC because of its (Acstar's) indemnity agreement with IHI. The indemnity agreement provided that IHI assigned to Acstar a security interest in "all sums due or to become due . . . in connection with any contract." The bankruptcy court overruled the objections and approved the settlement.

In October 1999 Acstar filed an amended proof of claim with the bankruptcy court for $805,781.41. This amount represents, according to Acstar, "money paid by ACSTAR on behalf of IHI on the Bond less the remaining collateral" and "fees of attorneys and other expenses which ACSTAR has incurred in recovering or attempting to recover losses or expenses paid or incurred in connection with the Bond." Acstar again asserted a security interest in the ERSIC insurance policy proceeds. Harden objected to Acstar's amended proof of claim. The bankruptcy court allowed the objection. Acstar appealed to the district court, which affirmed the bankruptcy court. Acstar now appeals to this court.

## II.

"We review de novo the decision of the district court, effectively standing in its place to review directly the findings of fact and conclusions of law made by the bankruptcy court. While we exercise plenary review of the bankruptcy court's legal conclusions, its factual findings may not be set aside unless they are clearly erroneous." *Butler v.*

*David Shaw, Inc.*, 72 F.3d 437, 440-41 (4th Cir. 1996) (citations omitted).

Harden maintains that Acstar is barred from asserting any additional claims against the estate because of the mutual releases the court ordered Harden and Acstar to execute as part of the settlement with the SEC. Acstar argues that the release only applies to Harden individually, and not to the bankruptcy estate. Acstar claims that this individual release arose out of Acstar's prior threats to sue Harden and his law firm over what Acstar considered an unfair settlement with the SEC.

A release is interpreted according to general principles of contract construction. If the language is clear and unambiguous, a court should interpret the release according to its plain meaning. If the terms are ambiguous, however, the trier of fact can look to extrinsic evidence in order to determine the meaning of the release. *See Farmers Bank, Pilot Mountain v. Michael T. Brown Distribs., Inc.*, 298 S.E.2d 357, 360 (N.C. 1983); *Lagies v. Myers*, 542 S.E.2d 336, 341-42 (N.C. Ct. App. 2001); *Holshouser v. Shaner Hotel Group Props.*, 518 S.E.2d 17, 23 (N.C. Ct. App. 1999). As our discussion below will demonstrate, extrinsic evidence cannot be considered in this case because the language of the release is clear.

We must first identify which release we are analyzing. Instead of signing the required release, Acstar signed a release that it had unilaterally revised. We refuse to consider the revisions. The bankruptcy court ordered that "the Trustee and the Sureties shall execute the mutual releases attached hereto as Exhibit B." Exhibit B contained the language quoted in part I of this opinion. Acstar is bound by the court's order and was not free to revise the terms of the release.

We hold that the language of the court-ordered release unambiguously precludes Acstar from making any additional claims against the bankruptcy estate. The release contains a clear promise by Acstar to cease making claims against Harden, as a representative of IHI's bankruptcy estate. The terms release Harden in three ways: (1) "individually," (2) "as Chapter 7 Trustee for [IHI]," and (3) "as a principal in the law firm of Maupin Taylor & Ellis, P.A." Releasing Harden "as Chapter 7 Trustee" is equivalent to releasing the estate. The trustee is

"the representative of the estate" and "has capacity to sue and be sued" on behalf of the estate. 11 U.S.C. § 323. *See also Bellini Imps., Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 202 (4th Cir. 1991) ("The trustee . . . must be named as a party defendant in an action seeking to proceed against assets of the estate." (citations omitted)). This role is consistent with the Bankruptcy Code's placement of "the incidents of ownership of property of the estate" in the hands of the trustee. 1 Norton, *supra*, § 23:1, at 23-3. By releasing Harden "as Chapter 7 Trustee," Acstar forfeited any additional claims against the bankruptcy estate.

Acstar's argument that the release only precludes claims against Harden in his individual capacity fails in the face of the plain language of the release. The release includes Harden "individually" and as "a principal in [his] law firm." But it also includes Harden "as Chapter 7 Trustee." Acstar's reading of the release renders the "Chapter 7 Trustee" language superfluous. Our reading of the release gives all of the words their plain meaning. *See Marcoin, Inc. v. McDaniel*, 320 S.E.2d 892, 896-97 (N.C. Ct. App. 1984) (noting that one of the "basic principles of contract construction" is to "giv[e] effect to each [word] whenever possible"). The terms of the release unambiguously release the estate from any further claims by Acstar.

### III.

Because we hold that Acstar's amended claim is barred by the release, we do not have to reach the issues of whether Acstar has a perfected security interest or an equitable lien in the ERSIC insurance policy proceeds. In addition, we will not consider Acstar's alternative arguments that the bankruptcy court's order should be set aside because the court failed to make factual findings in accordance with Fed. R. Civ. P. 52(a) or that Acstar is entitled to subrogation under 11 U.S.C. § 509. Acstar waived the former argument by failing to raise it in front of the district court. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered."). Acstar waived the latter argument by raising it for the first time in its reply brief to this court. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) ("[A]n issue first argued in a reply brief is not properly before a court of appeals.").

In conclusion, we affirm the district court's order, which affirmed the bankruptcy court's order allowing the trustee's objection to Acstar's amended proof of claim.

*AFFIRMED*